PARIENTE, J.,
specially concurring.
I concur in the majority’s affirmance of the convictions and sentences; however, I write to express my view that the admissibility of the evidence of the planned fight at the park and the subsequent discharge of the gun was questionable. I start with this essential proposition: Extreme caution must be exercised before allowing collateral crime evidence to be heard by the jury because of the obvious tendency for a jury to believe that a person who committed other criminal acts is more likely to have committed the crime in question. See Robertson v. State, 829 So.2d 901, 913-14 (Fla.2002) (“[T]he erroneous admission of irrelevant collateral crimes evidence ‘is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.’ ” (quoting Castro v. State, 547 So.2d 111, 115 (Fla.1989))). As I have previously stated:
[T]he danger of collateral crime evidence is that the jury will convict the defendant based on prior crimes because these unrelated crimes would “go far to convince [individuals] of ordinary intelligence that the defendant was probably guilty of the crime charged. But, the criminal law departs from the standard of the ordinary in that it requires proof of a particular crime.”
Smith v. State, 866 So.2d 51, 71 (Fla.2004) (Pariente, J., concurring in part and dissenting in part) (second alteration in original) (quoting Jackson v. State, 451 So.2d 458, 461 (Fla.1984)). So although the general test for admissibility of all evidence is “relevancy,” we have always recognized the potential for injustice if collateral crime evidence is placed before the jury. See Hodges v. State, 885 So.2d 338, 358 (Fla.2004) (“Regardless of relevancy of collateral crime evidence ... admissibility is improper where the probative value of the evidence is substantially outweighed by undue prejudice.”).
Whether the evidence is similar or dissimilar fact evidence, the same risk of danger exists that the jury will convict the defendant not based on the crime charged but because it hears that the defendant *109 has committed a series of bad acts. Therefore, in addition to analyzing whether the evidence is relevant, there must also be a careful analysis by the trial court and then this Court as to whether the prejudice from this collateral crime evidence substantially outweighs any probative value. See § 90.403, Fla. Stat. (2004).
In this case, as the majority correctly points out, the collateral crime evidence was not similar fact evidence. The majority cites to Griffin v. State, 639 So.2d 966 (Fla.1994), for the standard of relevancy for admitting dissimilar fact evidence. Griffin explains the test for dissimilar fact evidence as follows:
[Ejvidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence. It is admissible under section 90.402 because “it is a relevant and inseparable part of the act which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed.” Charles W. Ehrhardt, Florida Evidence § 404.17 (1993 ed.)-
Griffin, 639 So.2d at 968. Therefore, as I read Griffin, evidence of dissimilar uncharged crimes must be either “inseparable from the crime charged” or “inextricably intertwined” with the crime charged. The evidence becomes admissible because “it is a relevant and inseparable part of the act which is in issue” or it is “necessary to admit the evidence to adequately describe the deed.”
Trial courts must be always cautious to not allow dissimilar crime evidence simply because the other bad acts took place in close proximity to the crime. The more tenuous the link between the collateral act and the crime, the less “necessary” the collateral act evidence is to “adequately describe” the crime. In my view, the fact that there was no gun used during the murders makes the admissibility of the fact that Victorino fired a gun at a group while engaged in a car chase questionable. Further, a critical step in determining admissibility of prior bad acts is the careful analysis of prejudice.
However, I ultimately agree with the majority to affirm on this issue because I conclude in this case that any error in admitting evidence of the park fight and discharge of a firearm is harmless beyond a reasonable doubt in this case. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986). Here, the trial court gave a limiting instruction to the jury on the collateral acts evidence. Furthermore, while a review of the record reveals that the State did mention and rely on the evidence of the planned park fight and gunshot, these references were negligible when compared to the entirety of the State’s presentation, including the other evidence of the events leading up to the crime, the extensive and shocking evidence of the crime itself, and the substantial testimony of the defendant’s involvement as the ringleader in that crime. In light of the trial court’s instruction and the State’s limited use of this evidence, I conclude that any error in its admission did not contribute to the jury’s verdict. See Floyd v. State, 913 So.2d 564, 573-74 (Fla.2005) (holding that the erroneous admission of dissimilar fact evidence was harmless as it was strictly limited by the trial court and was only briefly referenced by the State). Accordingly, I concur in the majority’s affirmance of the convictions and sentences of death.